| |
|:---:|
| **Lifshitz v Wilhelm** |
| 2024 NY Slip Op 32565(U) |
| July 25, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 120/2022 |
| Judge: Leon Ruchelsman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: COMMERCIAL 8
-------------------------------------------x
BENJAMIN LIFSHITZ and REBECCA KASHANIAN,

                          Plaintiff,        Decision and order

      - against -                Index No. 120/2022

LEVI WILHELM, MORDECHAI GURARY a/k/a
MOTTY GURARY, ZALMAN WILHELM, BNOS
MENACHEM, INC., JOHN DOES 1-10 and ABC
CORPORATIONS 1-10,

                    Defendants,     July 25, 2024
-------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN      Motion seq. #8 & #9

        The plaintiffs have moved pursuant to CPLR §3212 seeking partial summary judgement vacating the deed to defendant Bnos Menachem Inc., and compelling the defendant to sell the property to plaintiffs. The defendants have cross-moved seeking summary judgement dismissing the first eight causes of action of the complaint. The motions have been opposed respectively and papers were submitted by the parties and arguments held. After reviewing all the arguments this court now makes the following determination.

        As recorded in prior orders, on or about June 29, 2016, Levi Wilhelm, the owner of property located at 729 East New York Avenue in Kings County entered into a contract to sell the property to the plaintiff Benjamin Lifshitz. The purchase price was $600,000 and the contract required a closing within sixty days. In October 2017, the parties entered into a rider wherein the closing was set for February 15, 2018. On that date, there were encumbrances which made closing impossible and the closing never occurred. Following that date no party took any action concerning the property until

[*1]

February 25, 2022 when the defendant cancelled the contract and sold the property to defendant Bnos Menachem. The parties engaged in discovery and now these summary judgement motions have been filed. The plaintiffs argue they are entitled to summary judgement since defendant Wilhelm had no authority to unilaterally cancel the contract and moreover they were ready, willing and able to purchase the property on the scheduled closing date. Thus, the court should grant summary judgement and require the contract to be effectuated granting them the property. The defendants have cross-moved arguing there are no questions of fact the plaintiffs were not ready and willing to close on the closing date and therefore the defendant Wilhelm had the right to cancel the contract. Consequently, the court should dismiss the first eight causes of action of the complaint which would effectively confirm the transfer of the deed to Bnos Menachem.

## Conclusions of Law

Where the material facts at issue in a case are in dispute summary judgment cannot be granted (Zuckerman v. City of New York, 49 NYS2d 557, 427 NYS2d 595 [1980]). Generally, it is for the jury, the trier of fact to determine the legal cause of any injury, however, where only one conclusion may be drawn from the facts then the question of legal cause may be decided by the trial court as a matter of law (Marino v. Jamison, 189 AD3d 1021,

2

136 NYS3d 324 [2d Dept., 2021).

It is well settled that to succeed on a claim seeking specific performance the plaintiff must demonstrate that the plaintiff has substantially performed all of its contractual obligations and was willing and able to perform its remaining obligations and that the defendant was able to convey the property, and that there was no other adequate remedy at law (see, E & D Group LLC v. Vialet, 134 AD3d 981, 21 NYS3d 691 [2d Dept., 2015]). The plaintiff must, therefore, establish, among the other requirements, that he had the financial ability to purchase the property (Singh v. Gopaul, 26 AD3d 370, 809 NYS2d 549 [2d Dept., 2006]).

To adequately oppose summary judgement the defendants must demonstrate the plaintiff cannot prove one or more of these elements (Chester Green Estates LLC v. Arlington Chester LLC, 161 AD3d 1036, 78 NYS3d 352 [2d Dept., 2018]). Thus, the buyer's claim for specific performance is entirely unrelated to the seller's ability, which will be addressed, to cancel the contract. Whether the seller had the ability to cancel the contract does not in any way support the buyer's requirements sufficient to demonstrate specific performance. Those requirements must be borne by the plaintiff's own evidence (see, Dairo v. Rockaway Boulevard Properties LLC, 44 AD3d 602, 843 NYS2d 642 [2d Dept., 2007]). As the court held in Contro v.

3

White, 176 AD2d 1052, 574 NYS2d 982 [3rd Dept., 1991] "even accepting plaintiff's contention that his agreement to give defendant an indefinite extension of time to perfect title relieved him of his obligation to tender performance, he was nevertheless required to establish that he was ready, willing and able to purchase the property" (id).

In support of the motion seeking summary judgement, the plaintiff has introduced a mortgage commitment letter and certain bank statements which they argue demonstrates the plaintiff maintained sufficient funds to close and was thus ready willing and able to close. However, the mortgage commitment letter is surely insufficient to eliminate all questions of fact whether the plaintiff was in fact ready willing and able to close. The commitment letter states that "the Commitment Expiration Date shown above is the date by which your loan must close and fund" (see, Mortgage Loan Commitment Letter, Page 1 [NYSCEF Doc. No. 115]). However, the letter does not contain a commitment expiration date. More significantly, the letter states that "all conditions in this Commitment Letter must be satisfied in full (at Lender's sole discretion) prior to closing and funding of the loan" (id). Thus, the commitment letter is not valid unless all the conditions are satisfied. The letter lists seventeen conditions that were required to be submitted to the lender five days prior to closing. These conditions include, among others,

4

[*4]

an appraisal of the property, title commitment, homeowner's and flood insurance and certain tax documents. The plaintiff has not submitted any information satisfying any of these necessary conditions. In Eves v. Bureau, 13 AD3d 1004, 788 NYS2d 21 [3rd Dept., 2004] the court held that a commitment letter which is facially incomplete is not a commitment letter sufficient to demonstrate specific performance. Indeed, the failure to satisfy all the conditions of the commitment letter necessarily means the plaintiff has failed to obtain a commitment letter sufficient to demonstrate the financial ability to close (see, Dairo, supra).

In addition, the plaintiff never demanded a closing take place. The plaintiff admits that a closing date was extended to afford the defendant an opportunity to cure liens upon the property but elides the scheduling of any closing (see, Dacatur (2004) Realty LLC v. Cruz, 30 AD3d 367, 815 NYS2d 485 [2d Dept., 2006]). Specifically, there is no evidence presented that an actual closing was demanded by the plaintiff. It is true that the second rider fixed the closing date of February 15, 2018 (see, Second Rider [NYSCEF Doc. No. 61]). However, there is no evidence a closing was scheduled, there is no evidence a title report was issued and there is no evidence that any of the usual and customary preparations necessary for a closing ever occurred. Moreover, since that date there has been no evidence presented the plaintiff took any action at all to schedule a closing.

5

Thus, an incomplete and preliminary mortgage commitment letter dated six months prior to the closing date without any activity at all actually attempting to conduct a closing raises significant questions of fact whether the plaintiff demonstrated the elements necessary for specific performance.

Therefore, based on the foregoing the plaintiff's motion seeking summary judgement is denied.

Turning to the defendant's motion seeking summary judgement on the grounds the defendant validly cancelled the contract an examination of the contract and the first rider is necessary.

Article 21(b)(i) of the contract essentially states that if the seller is unable to transfer title or if the purchaser has other reasons for refusing to close then the seller may cancel the contract. The reasons the purchaser may not wish to close include the existence of liens or encumbrances "or other objections to title or otherwise" (see, Residential Contract of Sale, ¶21(b)(i) [NYSCEF Doc. No. 59]). Notwithstanding, the purchaser may not refuse to close if there are defects for which the purchaser is obligated to accept title, for defects which the purchaser waived or for defects the seller expressly agreed to remove. The article concludes that if the purchaser does not wish to waive the existence of defects which would permit the purchaser to refuse to close without an abatement of the purchase price then the seller, at his sole discretion, can either remedy

6

[* 6]

the defects or cancel the contract (id). The Rider to the contract states that "unpaid liens for taxes, water charges and assessments shall not be objections to title, but the amount thereof, plus interest and penalties thereof, shall be deducted from the cash consideration to be paid hereunder and allowed to the purchaser, subject to the provisions for apportionment of taxes and water charges contained herein" (see, Rider to Contract of Sale, ¶4 [NYSCEF Doc. No. 59]). Thus, the rider amends Article 21(b)(i) to extent it removes the ability of the purchaser to refuse to close based upon the existence of the defects enumerated and requires the plaintiff to accept an abatement of the purchase price instead. Notably, the rider does not alter, at all, the defendant's ability to cancel the contract in its sole discretion. The plaintiff asserts the rider demonstrates the contract is still enforceable and could not be cancelled by the defendant. First, as noted, the rider only affects the rights of the purchaser not the seller. More importantly, any rights that flow from the rider were surely waived by the purchaser. The rider permits the purchaser to receive a deduction of the value of any encumbrances and forces the closing. However, the plaintiff has repeatedly insisted the closing was extended and, although the gap of four years has not been satisfactorily explained, confirmed he was waiting for the defendant to remove the encumbrances. The plaintiff has not

7

explained why he did not insist upon a closing, accept a reduced price and forego the removal of any encumbrances. Thus, the "impossible paradox" raised by the defendants could have easily been resolved in plaintiff's favor by simply accepting the property at a very reduced rate (see, Memorandum of Law, page 3 [NYSCEF Doc. 169]). In fact, if the defendant is correct, that the liens cost more than the purchase price, the plaintiff could have obtained the property, essentially for free. Of course, that would require an examination of the covered liens included within the Rider's language concerning "unpaid liens for taxes, water charges and assessments" (id). However, by expressly admitting the defendant extended the closing indefinitely, the plaintiff waived any rights or obligations based upon the rider. In any event, as noted, the rider to does alter the rights and obligations of the defendant Wilhelm.

The court previously held that Article 21(b) provides two paths whereby the seller can cancel the contract, one where the defendant endeavors to remedy any defects which is governed by Article 21(b)(ii) and one where the defendant does not cure any defects and that is governed by Article 21(b)(i). Even if Article 21(b)(ii) applies the defendant has fully satisfied all of the conditions. Pursuant to Article 21(b)(ii) if the seller took action to remove encumbrances and could not do so "for any reason whatsoever" and the purchaser refused to accept an

8

[* 8]

abatement then either party could cancel the contract. First, the clause implies the seller's activities and efforts were done in good faith (see, Sevilla v. Valiotis, 29 AD3d 775, 815 NYS2d 229 [2d Dept 2006]). Second, as noted, the plaintiff waived any ability to accept an abatement and insisted upon property free of any encumbrances. The defendant was not obligated to inform the plaintiff of his inability to cure the encumbrances. Thus, the defendant had the absolute right to cancel the contract and in fact did cancel the contract pursuant to its terms.

Therefore, the defendant's motion seeking summary judgement dismissing the first eight causes of action of the complaint is granted.

So ordered.

ENTER:

DATED: July 25, 2024
Brooklyn N.Y.

_____
Hon. Leon Ruchelsman
JSC

[* 9]